UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RALPH ADAMS,                            )
                                        )
                    Plaintiff,          )      09 C 5113
                                        )
        vs.                             )      Judge Feinerman
                                        )
THE CITY OF CHICAGO HEIGHTS, a municipal )
corporation, and DON GARCIA, individually and as )
Director of Code Enforcement of the City of Chicago )
Heights,                                )
                                        )
                    Defendants.         )

## MEMORANDUM OPINION AND ORDER

Plaintiff Ralph Adams filed this action against Defendants City of Chicago Heights and

Don Garcia, the Director of the City's Department of Code Enforcement, alleging various claims

stemming from the demolition of his house and garage on February 9, 2009.  With the

procedural due process claims against Chicago Heights having been dismissed, *see* Doc. 22

(Guzman, J.), the following claims remain: (1) procedural due process claims against Garcia

only; (2) a substantive due process claim; and (3) state law claims for trespass to real property

and for conversion of personal belongings destroyed in the demolition.  Adams sued Garcia in

both his individual capacity and his official capacity as the City's Director of Code Enforcement,

but the official capacity claims are entirely redundant of claims against the City, *see Robinson v.*

*Sappington*, 351 F.3d 317, 339-40 (7th Cir. 2003); *Jungels v. Pierce*, 825 F.2d 1127, 1129 (7th

Cir. 1987), so they will be given no separate consideration.

Before the court are Defendants' motion for summary judgment on the remaining claims

and Adams's motion to strike "Group Exhibit G" to Defendants' motion, which contains various

photographs of Adams's house prior to its demolition. Defendants' motion is granted in part and denied in part, and Adams's motion is denied as moot.

## Background

The following facts are undisputed or, if disputed, stated with the disputes resolved in Adams's favor. The Chicago Heights Department of Code Enforcement is tasked with ensuring that structures in Chicago Heights are safe and do not pose danger to the community. As Director, Garcia was responsible for the Department's day-to-day management and for supervising twelve inspectors.

Adams resided at and owned 282 West 15th Place in Chicago Heights, working as a self-employed junk dealer and antique repairer. On February 4, 2009, a fire occurred in the living room, which the City's Fire Department extinguished within two hours. The fire re-ignited the next day and once again was extinguished by the Fire Department. Adams asserts that a three-foot area of the living room was burned, and that the living room's wall and ceiling were burned but not burned through; he further asserts that the unattached garage on the property did not suffer damage, and that the garage's walls did not buckle, bow, or bend in any way. The Fire Department's Incident Report indicates that the house sustained no more than "minor damage" and that any damage was confined to the floor of origin.

On February 5, after the second fire, Garcia and Building Inspector Sam Hernandez visited the property. They did not physically enter the living room, where the fire occurred; neither proceeded any further than the rear entrance to Adams's kitchen, which was located at the back of the house and separated from the living room by a wall and a swinging door. Adams avers that an observer from this vantage could not have seen most of the living room.

Garcia verbally informed Adams during the February 5 visit that the house was going to be demolished, and reiterated the point during a later meeting in Garcia's office. Adams objected and, while at Garcia's office, telephoned his attorney. Garcia did not mention the garage either at the house or at his office. The record contains a letter dated February 5, 2009, from Garcia to Adams, regarding "Emergency Demolition Order of 282 West 15th Place, Chicago Heights," which informed Adams that the City intended "to start demolition of the above-referenced structure immediately because of unsafe conditions." Adams avers that the letter was never given to him. Garcia sent a letter on February 5, 2009, to Alliance Demolition to arrange for the demolition.

Hernandez issued a half-page Fire Inspection Report dated February 6, 2009. By contrast to the Fire Department's Incident Report, Hernandez's report states that there was "extreme fire damage to the floor joists, support beams and large openings in the foundation," that "the floor of the first floor had collapsed due to the weight of all the accumulation of rubbish throughout the house," and that the "floors, walls and ceiling" of the first floor "were damaged beyond repair." The report concludes with Hernandez's "opinion [that] this property posed a hazard and is a unsafe structure to the community and should be demolished immediately." The report does not mention Adams's garage. Defendants do not claim, and no record evidence indicates, that any notice was affixed to the property to warn passersby of the dangers allegedly posed.

After the meeting in Garcia's office, Garcia allowed Adams to remove personal belongings from the premises. Adams retrieved personal property from his house, but did not take anything from the garage because (he claims) he did not know that the garage would be demolished along with the house. On February 9, 2009, Alliance Demolition demolished Adams's house and garage, destroying all personal property that remained in those structures.

Section 22-7 of the Chicago Heights Code provides that a structure may be demolished "[w]here there is a dangerous, unsafe building or structure or a building or structure which is imminently dangerous to the health, morals, safety or general welfare of the occupants or the public." Section 22-7 requires that the owner be given at least twenty days' notice and the opportunity to challenge the proposed demolition at a hearing. Section 22-9 of the Code authorizes "the immediate … demolition" of an "unsafe building or structure" "where it reasonably appears that there is immediate danger to the life, health or safety of any person unless [the building or structure] is immediately … demolished." Section 22-10 provides that when a city officer determines that emergency measures will be taken under Section 22-9, the officer "shall affix a notice on the building or structure, in a conspicuous place on the exterior wall thereof[,] informing all persons to keep out of said building or structure." As noted above, there is no record evidence that such notice was posted to Adams's home or garage.

## Discussion

### A.     Counts I-II: Procedural Due Process Claims Against Garcia

Garcia contends that he is entitled to qualified immunity on Adams's claim that the demolition of his house and garage without written notice and a pre-deprivation hearing violated the procedural component of the Due Process Clause of the Fourteenth Amendment. "The doctrine of qualified immunity protects government officials from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *McAllister v. Price*, 615 F.3d 877, 881 (7th Cir. 2010) (citing *Pearson v. Callahan*, 555 U.S. 223 (2009)). "When confronted with a claim for qualified immunity, [the court] must address two questions: whether the plaintiff's allegations make out a

deprivation of a constitutional right, and whether the right was clearly established at the time of defendant's alleged misconduct." *Ibid*.

The first question in the qualified immunity analysis is whether, construing the record in the light most favorable to Adams, Garcia violated procedural due process. "A procedural due process claim requires a two-fold analysis. First, [the court] must determine whether the plaintiff was deprived of a protected interest; second, [the court] must determine what process is due." *Leavell v. Ill. Dep't of Natural Res.*, 600 F.3d 798, 804 (7th Cir. 2010). Garcia does not and could not dispute that Adams had a protected interest in his house and garage. *See McGee v. Bauer*, 956 F.2d 730, 735-36 (7th Cir. 1992) (describing plaintiff's house as a "substantial property interest"). The question, then, is whether Adams was afforded sufficient process prior to the demolition.

The governing law is settled. "Absent exigent circumstances, or a random or unforeseen act, a pre-deprivation procedure is generally required before the government may deprive a person of [his] property." *Siebert v. Severino*, 256 F.3d 648, 659 (7th Cir. 2001) (citing *Zinermon v. Burch*, 494 U.S. 113, 132 (1990), and *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436 (1982)). Garcia does not contend that Adams was provided a pre-deprivation hearing at which he could have challenged the demolition. Nor does Garcia suggest that demolishing Adams's house and garage without a hearing was "a random or unforeseen act." To the contrary, Garcia maintains that "he acted under the authority of the City's municipal code"—specifically, Section 22.9, which allows city officials to demolish a structure without a pre-demolition hearing under certain circumstances. Doc. 32 at 3; *see Zinermon*, 494 U.S. at 138 (action not random and unforeseen where the government "delegated to [the individual defendants] the power and authority to effect the very deprivation complained of").

Consequently, Garcia's decision to demolish Adams's house and garage without a pre-demolition hearing complied with procedural due process if there were "exigent circumstances." *Siebert*, 256 F.3d at 659; *see also WWBITV, Inc. v. Vill. of Rouses Point*, 589 F.3d 46, 51 (2d Cir. 2009) ("an official reasonably believing on the basis of competent evidence that there is an emergency does not effect a constitutional violation by ordering a building demolition without notice or a hearing") (citing *Catanzaro v. Weiden*, 188 F.3d 56 (2d Cir. 1999)); *Smith v. City of Albany*, 250 Fed. Appx. 417, 418 (2d Cir. 2007) ("the city's failure to grant [the plaintiff] a pre-demolition hearing" violates due process unless the defendants reasonably believed that the "building posed an imminent danger to the public").  In the present posture, the question whether "a genuine emergency exists is a factual issue, subject to the usual considerations for a district court addressing a summary judgment motion." *WWBITV*, 589 F.3d at 51.  "Summary judgment may not be awarded where there is a genuine issue of fact as to whether officials acted arbitrarily in declaring an emergency."  *Ibid*.; *see also Burtnieks v. City of New York*, 716 F.2d 982, 988 (2d Cir. 1983).  In making this inquiry, "some deference" must be accorded the local official's decision whether "the buildings actually created an immediate danger to the public." *Catanzaro*, 188 F.3d at 62.

Even giving Garcia's decision the deference it is owed, a jury reasonably could find that he had no reasonable basis to believe that the post-fire condition of Adams's property posed the exigency or emergency necessary under the Due Process Clause to dispense with a pre-demolition hearing.  Granted, Garcia's decision finds support in Hernandez's report, which opined that the "property posed a hazard and is a unsafe structure to the community and should be demolished immediately."  But the Fire Department's Incident Report states that the house sustained no more than "minor damage" and that the damage was confined to the floor of origin.

Moreover, Defendants admit that Garcia and Hernandez never entered the living room, where the fire occurred, and at this point the court must credit Adams's averment that Garcia and Hernandez could not see the living room from their vantage point in the kitchen. The fact that Garcia allowed Adams to enter the house to retrieve some belongings could suggest that the danger was not as imminent as Defendants now claim. The same suggestion could arise from the apparent fact that Garcia and Chicago Heights did not affix an emergency notice on the house and garage warning passersby to stay out.

Given the foregoing, as well as the fact that Hernandez was Garcia's subordinate and thus (a jury might conclude) susceptible to adopting his supervisor's view of the situation, material factual disputes preclude finding that Garcia did not violate Adams's procedural due process rights. *See Burtnieks*, 716 F.2d at 988-89 (denying summary judgment where "the existence *vel non* of an emergency … is vigorously contested by the parties"); *DePietro v. City of New York*, 2010 WL 449096, at *6-8 (E.D.N.Y. Feb. 2, 2010) (allowing procedural due process claim to proceed where there were factual disputes regarding "whether the City had an evidentiary basis to support its emergency finding"). This is true of Adams's house, and particularly true of Adams's unattached garage, as the record, resolving all genuine disputes in Adams's favor, shows that the garage posed no danger, let alone an imminent danger.

The second question in the qualified immunity analysis is whether the Fourth Amendment right at issue "was clearly established" in February 2009, when the relevant events occurred. *McAllister*, 615 F.3d at 881. There is no dispute over what the law required. Garcia admits, and in fact argues, that "[c]aselaw at the time of the demolition evidences that a summary demolition of an imminently dangerous building" does not violate procedural due process. Doc. 32 at 11; *see also Siebert*, 256 F.3d at 660-61 (holding that the defendant is "not

entitled to qualified immunity on this claim because it has been clearly established since at least *Logan* that unless pre-deprivation relief is impractical, it must be provided" and that "a pre-deprivation hearing is required absent an emergency situation or a random and unauthorized deprivation"); *DePietro*, 2010 WL 449096, at *13.

Garcia maintains that his actions were "reasonable," warranting summary judgment, because the facts permitted him reasonably to conclude that exigent circumstances were present. *See* Doc. 32 at 12-13; Doc. 41 at 7-8. As noted above, however, material factual disputes preclude finding, as a matter of law, that a reasonable official in Garcia's position reasonably could have come to the conclusion Garcia reached. Accordingly, Garcia is not entitled to qualified immunity on the procedural due process claim. See *Gonzalez v. City of Elgin*, 578 F.3d 526, 540 (7th Cir. 2009) (denying summary judgment where the reasonableness of the defendant's actions "cannot be disentangled from disputed facts").

### B.       Count III: Substantive Due Process Claim

Defendants also seek summary judgment on Adams's substantive due process claim. "The scope of substantive due process … is very limited and protects plaintiffs only against arbitrary government action that 'shocks the conscience.'" *Montgomery v. Stefaniak*, 410 F.3d 933, 939 (7th Cir. 2005). The Seventh Circuit has sharply circumscribed the theory's use in cases involving the deprivation of a property interest, noting that substantive due process is not "a blanket protection against unjustifiable interferences with property." *Lee v. City of Chicago*, 330 F.3d 456, 467 (7th Cir. 2003). "[W]hen a substantive-due-process challenge involves only the deprivation of a property interest, a plaintiff must show 'either the inadequacy of state-law remedies or an independent constitutional violation' before the court will even engage in … deferential rational-basis review." *Ibid.* (quoting *Doherty v. City of Chicago*, 75 F.3d 318, 323-

26 (7th Cir. 1996)). Adams cannot possibly show the inadequacy of state law remedies, given that he has brought state law trespass and conversion claims. *See Lee*, 330 F.3d at 467 (holding that substantive due process plaintiff did not show "the inadequacy of state-law remedies" where he "asserted pendant state-law claims for bailment, trespass, and wrongful conversion"); *Porter v. DiBlasio*, 93 F.3d 301, 310 (7th Cir. 1996) (same where plaintiff brought conversion claim). So, the viability of Adams's substantive due process claim turns on whether he can show an independent constitutional violation.

What, though, is an "independent constitutional violation"? The parties assume that the term connotes a violation of some *other* constitutional provision, that is, a violation of something other than substantive due process. *See* Doc. 32 at 5; Doc. 36 at 8-9; Doc. 41 at 4. The assumption finds support in Seventh Circuit case law. *See, e.g., LaBella Winnetka, Inc. v. Vill. of Winnetka*, 628 F.3d 937, 943 (7th Cir. 2010) ("In light of our conclusion that LaBella failed to state a class-of-one claim, it has no independent constitutional violation on which to base its substantive due process claim."); *Lee*, 330 F.3d at 467 (same where plaintiff failed to state a Fourth Amendment claim). In the absence of binding precedent from the court of appeals, the assumption would be open to question. The Supreme Court has held that where a particular "Amendment provides an explicit textual source of constitutional protection against [a particular sort of government behavior], that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Graham v. Connor,* 490 U.S. 386, 395 (1989). The Court has explained that "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under [that] standard." *United States v. Lanier,* 520 U.S. 259, 272 n.7 (1997). It would seem to follow that if a plaintiff can show that a defendant violated a constitutional command other than

substantive due process, then a substantive due process claim would be defeated rather than created—which means that the term "independent constitutional violation" connotes an independent *substantive due process* violation, such as where the defendant's conduct constitutes an arbitrary abuse of government power that "shocks the conscience." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846-47 (1998); *see Bublitz v. Cottey*, 327 F.3d 485, 489-92 (7th Cir. 2003).

In any event, Adams's substantive due process claim fails because another Seventh Circuit case, *Gable v. City of Chicago*, 296 F.3d 531 (7th Cir. 2002), holds that a procedural due process claim cannot serve as the "independent constitutional violation" underlying a substantive due process claim. *Id.* at 541 (plaintiffs alleging violations only of procedural due process and substantive due process "fail to allege a constitutional violation other than violations of due process, and thus have not shown that the City violated 'some other substantive constitutional right'"); *see also Mucha v. Vill. of Oak Brook*, 2008 WL 4686156, at *6 (N.D. Ill. May 29, 2008) ("But even assuming [defendant] violated procedural due process … , that is not sufficient to support plaintiff's substantive due process claim. Plaintiff refers to this violation as 'another constitutional violation.' The [law] … , however, requires another substantive constitutional violation. A violation of procedural due process is not a substantive constitutional violation."); *Gentry v. Vill. of Bolingbrook*, 2007 WL 899573, at *2 (N.D. Ill. Mar. 19, 2007). Because Adams's only other constitutional claim sounds in procedural due process, he has not alleged an "independent constitutional violation" that, under Seventh Circuit precedent, would entitle him to pursue a substantive due process claim. Defendants therefore are entitled to summary judgment on the substantive due process claim.

### C.    Counts IV-V: State Law Trespass and Conversion Claims

Defendants contend that Adams's state law trespass and conversion claims are barred by the Illinois Local Governmental and Governmental Employees Tort Immunity Act, 745 ILCS 10/2-101 *et seq*.  The Act applies in federal court to state law claims brought against local government entities and their employees.  *See Chelios v. Heavener*, 520 F.3d 678, 692-93 (7th Cir. 2008).  It provides that a "public employee" like Garcia "is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct."  745 ILCS 10/2-202.  It further provides that a "local public entity" like Chicago Heights "is not liable for any injury resulting from an act or omission of its employee where the employee is not liable."  745 ILCS 10/2-109.  Because Adams's state law claims arise from Garcia's conduct in the "execution or enforcement" of the Chicago Heights Code, whether the Act protects Defendants from liability turns on whether Garcia's conduct was "willful and wanton."

The Act defines "willful and wanton conduct" as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property."  745 ILCS 10/1-210.  "Whether conduct is willful and wanton is a factual question."  *Carter v. Simpson*, 328 F.3d 948, 951 (7th Cir. 2003); *see also Chelios*. 520 F.3d at 678.  For the reasons set forth in Section A, *supra*, a reasonable jury could conclude that Garcia displayed "an utter indifference to or conscious disregard for" Adams's "property"—his house, his personal property, and particularly his garage.  *See Chelios*, 520 F.3d at 693 (holding that the district court erred in granting summary judgment because a jury could find that the defendant's conduct was willful

and wanton); *Carter*, 328 F.3d at 951 (same). Accordingly, on summary judgment, the Act does not provide grounds for granting judgment to Defendants on the state law claims.

Defendants also argue, in a short paragraph, that Adams cannot prove the elements of trespass or conversion under Illinois law. *See* Doc. 32 at 17. Defendants do not develop their argument and cite no legal authority, so the point is forfeited. *See Judge v. Quinn*, 612 F.3d 537, 557 (7th Cir. 2010). The argument fails on the merits in any event.

The tort of trespass is "an invasion in the exclusive possession and physical condition of land." *Lyons v. State Farm Fire & Cas. Co.*, 811 N.E.2d 718, 725 (Ill. App. 2004). "An officer's entry onto another person's land may be privileged, however, if the officer is reasonably exercising his lawful authority." *Kay v. Cnty. of Cook*, 2006 WL 2509721, at *7 (N.D. Ill. Aug. 29, 2006) (citation omitted). While Garcia plainly was privileged to enter Adams's property to inspect the premises on February 5, 2009, there are open questions regarding whether the entry on February 9, 2009, for purposes of conducting the demolition was a reasonable exercise of Garcia's lawful authority. Garcia's entry might have been unlawful as a matter of procedural due process, as noted above. It also might have been unlawful under the Chicago Heights Code. Section 22-9 authorizes "the immediate … demolition" of an "unsafe building or structure" "where it reasonably appears that there is immediate danger to the life, health or safety of any person unless [the building or structure] is immediately … demolished." But the same material factual disputes that preclude summary judgment on whether "exigent circumstances" existed for purposes of the procedural due process analysis also preclude summary judgment on whether there was an "immediate danger to the life, health or safety of any person" for purposes of evaluating Garcia's compliance with Section 22-9.

The tort of conversion occurs where the plaintiff had a right to the property, had an absolute and unconditional right to the immediate possession of the property, and made a demand for possession, and where the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property. *See Van Diest Supply Co. v. Shelby Cnty. State Bank*, 425 F.3d 437, 439 (7th Cir. 2005) (citing *Cirrincione v. Johnson*, 703 N.E.2d 2d 67, 70 (Ill. 1998)). Defendants contend that Adams cannot prove conversion because he has failed to show that Defendants took any personal property from his house or garage. The contention is without merit. "The material alteration of a chattel can constitute conversion, even if [Defendant] never took actual possession of the chattel." *Paldo Sign & Display Co. v. Topsoil Sportswear, Inc.*, 2010 WL 276701, at *1 (N.D. Ill. Jan. 15, 2010) (citing *Loman v. Freeman*, 890 N.E.2d 446, 461 (Ill. 2008)). As the Restatement teaches, "[o]ne who intentionally destroys a chattel or so materially alters its physical condition as to change its identity or character is subject to liability for conversion to another who is in possession of the chattel or entitled to its immediate possession." Restatement (Second) of Torts § 226 (1977). That is precisely what Defendants are alleged to have done here.

## Conclusion

For the foregoing reasons, Defendants' motion for summary judgment is granted as to the substantive due process claim against Garcia and the City (Count III), and denied as to the procedural due process claims against Garcia (Counts I-II) and the state law trespass and conversion claims against Garcia and the City (Counts IV-V). Adams's motion to strike

Defendants' "Group Exhibit G" is denied as moot, as the photographs therein were immaterial to the court's resolution of Defendants' summary judgment motion.

February 18, 2011

_____
United States District Judge